CHRISTOPHER CHIOU
Acting United States Attorney
Nevada Bar No. 14853
BIANCA R. PUCCI
Assistant United States Attorney
District of Nevada
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
702-388-6336
Bianca.Pucci@usdoj.gov

*Representing the United States of America*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JACQUES ANTON LANIER, <br><br> Defendant. | Case No.: 2:19-cr-00327-GMN-VCF <br><br> **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT [ECF NO. 97]** |

Certification: This response in opposition is timely filed.

**I.     Introduction**

The government respectfully requests the Court deny Lanier's motion for two reasons: (1) the government did not violate Lanier's Sixth Amendment right to counsel because it did not instruct the detention center to review any legal mail and is unaware of the contents of the purported article; and (2) Lanier cannot make a showing that the government's purported acts were outrageous or flagrant causing substantial prejudice to him. In support, the government provides the following:

///

## II.     Relevant Background[1]

On December 31, 2019, Lanier was indicted by a federal grand jury with eight counts of *Coercion and Enticement*, in violation of 18 U.S.C. § 2422(b), four counts of *Sex Trafficking of Children*, in violation of 18 U.S.C. §§ 1591(a) and (b)(2), one count of *Traveling in Interstate Commerce with Intent to Engage in Illicit Sexual Conduct*, in violation of 18 U.S.C. § 2423(b), one count of *Transferring of Obscene Material to a Minor*, in violation of 18 U.S.C. § 1470, and one count of *Tampering with a Witness, Victim or an Informant*, in violation of 18 U.S.C. § 1512(b). ECF No. 1.

On January 7, 2020, Lanier made his initial appearance and was detained pending trial. ECF Nos. 8, 13, and 66 (Transcript of Initial Appearance/Arraignment & Plea). The government requested and the Court ordered Lanier to "not attempt to contact any of the individuals named in the case or as potential victims or witnesses." *Id.* at 14; *see also* ECF No. 8 (minutes of proceedings). The no contact order did not extend to Lanier's defense counsel. *Id*.

In February 2020, Victim #2's mother notified the government that she received a hand-delivered letter written by Lanier. As a result, the government filed an emergency Motion to Restrict Defendant's Telephone Privileges and Mailings. ECF No. 29. The Court provisionally restricted Lanier's telephone and mail privileges the same day the government's motion was filed. ECF No. 32 (minutes of proceedings).

On March 2, 2020, a hearing was held on the motion. ECF No. 37 and 71

---

[1]     The Court is aware of the facts leading up to the protective order currently in place regarding Lanier's communication privileges. The government does not seek to belabor the matter, and instead incorporates the facts and arguments previously provided. ECF Nos. 29 and 87.

(Transcript of Hearing Re: Motion to Restrict Defendant's Telephone and Mailing Privileges). The Court ordered Lanier's telephone and mail privileges be restricted to his lawyer and biological children ("the March 2020 Order"). *Id.* at 23.

It is the government's understanding that, after the March 2020 Order was issued, the detention center screened Lanier's outgoing mail to ensure he was complying with this Court's order. Shortly thereafter, the U.S. Marshals informed the government that Lanier attempted to contact people not listed on his approved contact list, to wit: Tiffany Richardson, K. Smith, and Louisa Brinson, by sending some of these letters with a return address listing a different inmate's name. The detention center intercepted and held those letters. On at least three occasions, the detention center informed the government of these intercepted outgoing letters. None of these letters purported to be "legal mail." Because none of the letters seemed to be related to witness or victim tampering, the government did not seek the Court's intervention and simply informed the detention center to follow their policies and procedures. The detention center charged Lanier with a major violation due to his multiple attempts to send out mail addressed with other detainees' information to people who were not on Lanier's approved contact list.

On March 5, 2021, Lanier filed a Motion to Modify Order Restricting Defendant's Telephone and Mailing Privileges. ECF No. 86. In preparing its response, the government requested information from the detention center related to Lanier's telephone and mail communications. In response, the detention center indicated that so far in 2021, Lanier had attempted to send out mail using other detainees' names and numbers approximately six to seven times, with several more attempts throughout 2020. On March 18, 2021, the government filed its response to defendant's motion to modify the March 2020 Order, agreeing to expand Lanier's approved contact list. ECF No. 87.

On April 9th, the Court held a hearing on the defendant's motion. ECF No. 92. The Court granted a modification to expand the list of people that Lanier may contact. *Id.* The Court ordered the parties to submit proposed orders by April 16th listing the contacts with whom Lanier may have contact. *Id.* The government met and conferred with defense counsel regarding a proposed stipulated order. Lanier did not stipulate to a proposed order. On April 16th, the government submitted its proposed order to expand Lanier's contact list. ECF No. 95. Lanier did not file a proposed order.

On April 19th, the detention center reached out to the government regarding a letter Lanier attempted to send. The letter was addressed to Kenishua Smith, a contact not listed in the March 2020 Order but included in the government's proposed order regarding the expanded list. As of April 21st, this Court had not yet entered an order either accepting or modifying the government's proposed order,[2] and so the government had not responded to the detention center's query regarding the Kenishua Smith letter. On that same day, the government received a phone call from the detention center. The government spoke with the detention center regarding the Kenishua Smith letter and confirmed that because the letter was not related to victim or witness tampering, and because the addressee was listed on the government's proposed list of approved contacts (to which the government would have stipulated inclusion), the letter would presumably not violate the Court's order.

During that same phone call, the detention center indicated Lanier also received mail that purported to be legal mail, but that the detention center was not certain if it was in fact legal mail. Concerned that Lanier may be receiving mail fraudulently marked as "legal mail" in furtherance of his efforts to commit witness tampering, the government

---

[2] On May 4, 2021, the Court entered the government's proposed order modifying Lanier's communication privileges. ECF No. 103.

asked detention staff what was contained in the envelope. The detention center informed the government that the envelope had a return address for Lanier's attorney but no cover letter or other indicia that it was legal mail and contained a printed article about sex trafficking. The government did not ask for any additional information and received no information regarding the substance of the article other than the general topic. The government responded that if the purported "legal mail" had nothing to do with victim or witness tampering, the government had no interest in the mailing at all, and the detention staff should follow the detention center's policies and procedures. The detention center informed the government that it had contacted defense counsel's office to confirm whether the article was in fact sent from them and had not yet received confirmation. The government again reiterated that the government was only concerned with attempts to contact and tamper with the victims and witnesses in this case. The government has had no further communications with detention center staff regarding that particular piece of mail or any other purported legal mail.

On April 27, 2021, Lanier filed the instant motion to dismiss the indictment. ECF No. 97. In his motion, Lanier informed this Court that he had a two-hour conversation with defense counsel regarding a news article. *Id.* at 5. Based on the timeline laid out in Lanier's motion as well as above, the government believes the mailing described in Lanier's motion may be the same mailing described above. The government was unaware of any phone call associated with the mailing until Lanier's filing. *See id.* at Ex. A. In his motion, Lanier informed this Court that the legal assistant confirmed with the detention center that the article was related to a discussion between Lanier and his defense counsel. *See id.* The government was also unaware until Lanier's filing that the legal assistant confirmed anything with the detention center. *See id.*

This response follows.

### III.     Argument

A district court may dismiss an indictment based on outrageous government conduct if the government's conduct amounts to a due process violation. *United States v. Ross*, 372 F.3d 1097, 1107 (9th Cir. 2004), on reh'g in part, 138 F. App'x. 902 (9th Cir. 2005) (citing *United States v. Simpson*, 813 F.2d 1462, 1464-65 (9th Cir. 1987)). To establish outrageous conduct, the burden is on the defendant to show the government acted in a way that was "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991)(quoting *United States v. O'Connor*, 737 F.2d 814, 817 (9th Cir. 1984)) (internal quotation marks omitted) (emphasis added); *see also United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011). Dismissal of an indictment under an outrageous conduct theory is therefore "limited to extreme cases in which *the government's conduct* violates fundamental fairness and is 'shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment.'" *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003) (quoting *United States v. Russell*, 411 U.S. 423, 431-32 (1973))(emphasis added).

A district court may also dismiss an indictment under its supervisory powers. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). This form of dismissal "requires (1) flagrant misbehavior [on the part of the government] and (2) substantial prejudice [to the defendant]." *United States v. Kearns*, 5 F.3d 1251, 1253-54 (9th Cir. 1993). Dismissal under this theory is appropriate "to remedy a constitutional or statutory violation [perpetuated by the government]; to protect judicial integrity by ensuring that a conviction

rests on appropriate considerations validly before a jury; or to deter future illegal conduct [by the government]." *Stinson*, 647 F.3d at 1210 (quotation omitted).

"'Dismissal of an indictment is considered a 'drastic step' and is generally disfavored as a remedy.'" *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000) (quoting *Guam v. Muna*, 999 F.2d 397, 399 (9th Cir.1993)). To warrant that remedy, the "[defendant] must prove *that the government's conduct* was 'so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process'." *Unites States v. Edmonds*, 103 F.3d 822, 825 (9th Cir. 1996) (quoting *United States v. Garza–Juarez*, 922 F.2d 896, 904 (9th Cir. 1993)) (emphasis added).

Lanier's motion fails for two independent reasons. First, the government did not, and Lanier has not alleged, that the prosecutor in this case, the case agents, or "the government's" actions are what allegedly harmed him. Second, in any event, he cannot show (and has not even averred) that *the government's purported act* was so "outrageous" or "flagrant" to support dismissal of the indictment.

### A.  The Government did Not Violate Lanier's Sixth Amendment Right to Counsel.

When a defendant claims a violation of the attorney-client privilege, he has the initial burden of demonstrating a violation. *United States v. Rasheed*, 663 F.2d 843, 854 (9th Cir. 1981) (defendant had "not satisfied her initial burden to show that there was in fact a violation of the attorney-client privilege in this case."). The Ninth Circuit established a two-step analysis for claims that the government violated the defendant's Sixth Amendment rights: 1) the defendant must prove that *the government acted affirmatively* to intrude into the attorney-client relationship and thereby obtain the privileged information, and 2) "once this prima facie case has been established the burden shifts to the government to show that

there has been . . . no prejudice to the defendant [ ] as a result of these communications." *United States v. Danielson*, 325 F.3d 1054, 1071 (9th Cir. 2003) (quoting *United States v. Mastroianni*, 749 F.2d 900, 907-08 (1st Cir. 1984)). Thus, the burden never shifts and the inquiry is complete if there is no affirmative government act. *Id.*

Even if the defendant meets his initial burden of proving the government intruded on the attorney-client relationship, that intrusion in and of itself does not rise to a constitutional violation:

> Despite the high approbation our system has for the attorney-client privilege, the Supreme Court has twice held that government invasion of that privilege or the defense camp is not sufficient by itself to cause a Sixth Amendment violation. The defendant must have been prejudiced by such actions. Our circuit has also explicitly held that prejudice is required.

*United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir. 1991) (citations omitted).

> 1. *Lanier cannot demonstrate the government violated the attorney-client privilege, or that it did so affirmatively, or that it obtained privileged information at all.*

The government did not affirmatively act to intrude on the attorney client privilege. And Lanier does not even allege this to be the case. The government did not instruct the detention center to review Lanier's legal mail. In fact, the government *repeatedly and on multiple occasions* informed the detention center it was not interested in any mail save outgoing mail that was attempting to tamper with witnesses and victims given Lanier's history in the case.

To be perfectly clear, the detention center did not review Lanier's legal mail at the direction of the government, and Lanier does not allege this to be the case. Moreover, the detention center is not employed by the government. The detention center is a private entity operating under a contract with the U.S. Marshal's Service, under the direction of this Court. Any acts taken at the discretion of the detention center are at least three levels

removed from the government (the private contractor running the facility, the United States Marshal's Service contracting with the facility, and this Court directing the U.S. Marshal's Service all stand between the facility and the government). To the government's knowledge, Lanier's mail was reviewed by detention staff to confirm it did not contain contraband under the detention center's policy in which it reviews inmates' incoming mail. And the detention center has the authority to inspect an inmate's legal mail to make "sure that illegal goods or items that pose a security threat are not hidden in the envelope." *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017).[3]

Although in an apparent attempt to effectuate the spirit of this Court's order, a detention center staff member mentioned to the government that an envelope that purported to be legal mail (containing no other indicia of legal mail other than a return address) containing an article was sent to Lanier, that information was provided to the government *unsolicited*, and the government still has no knowledge of the substantive content of that article.

By way of providing the Court context, the detention center was tasked with enforcing the Court's order restricting Lanier's communication privileges, which includes his mail privileges. Because of this, the detention center reviewed Lanier's **outgoing** mail and discovered Lanier wrote a letter in April of 2021 to a person who was not listed on the March 2020 Order. However, due to the oral pronouncement in April 2021 expanding

---

[3]  Government counsel is aware of other incidents where inmates have attempted to smuggle contraband into the detention center under the guise of "legal mail." *See, e.g., United States v. Saterstad*, Case No. 2:15-cr-125-APG-EJY, ECF Nos. 163, 164. Government counsel is also aware of recent attempts by inmates to obtain synthetic cannabinoids via mailings into the facility. *See United States v. Alexander*, Case No. 2:-17-cr-72-RFB, ECF No. 281.

Lanier's contact list, the detention center was unaware if Kenishua Smith was an approved contact to whom Lanier could send mail. Knowing that the Court orally expanded Lanier's contact list, the detention center sought clarification if it could send the Kenishua Smith letter. In a telephone call to the government, the detention center and the government discussed the Kenishua Smith letter. Lanier does not raise any objection to this conversation.

While on the phone call discussing the Kenishua Smith letter, the detention center asked regarding a piece of mail sent to Lanier purporting to be legal mail. The detention center informed the government it was an article about sex trafficking. The government did not request a copy of the article and does not have a copy of the article. In fact, the government is still unaware of anything related to the article other than the broad topic (which is particularly unsurprising and pedestrian considering the charges in this case). The government told the detention center to follow their policies and procedures (just as it had done in the past). The government is unaware of any other legal mail that may have been reviewed by the detention center.

Lanier's attempt to assign nefarious intent to the government's good faith attempts to protect victims and witnesses from Lanier's conduct – acts that Lanier has proven time and again that he will continue to attempt with or without restrictions – as required by the Crime Victim's Rights Act, must be rejected. To be sure, Lanier's counsel has already recognized the government's request for restrictions on Lanier's communication privileges were based on the legitimate interest in preventing Lanier from communicating with victims. *See* ECF No. 97 at 4.

Lanier's grievance appears to lie with the detention center's policies and procedures and has nothing to do with the government. If Lanier seeks to challenge the detention

center's policies and procedures, he may do so through the proper avenue, such as through the grievance process or a civil action. But a motion to dismiss the indictment is not the appropriate avenue because it seeks to punish the government who (as Lanier acknowledges) did not affirmatively instruct nor request the detention center review legal mail or provide any substantive information regarding the legal mail to the government.

Lanier also claims that the government now has knowledge of privileged information. He is wrong. Prior to the filing of the motion to dismiss, at best, the government was only vaguely aware that someone[4] sent Lanier an article about sex trafficking. The government was not aware if defense counsel was in fact the person who sent the mailing. The government was not aware that defense counsel spoke with Lanier about the news article for approximately two hours as a potential defense theory. The government was not aware, and is still not aware, of the content of the article. Moreover, while the government has never seen the "article," it is relying on the description Lanier provided in his motion that it is in fact a news article, which are publicly available. And, even if the government wanted to find out what article it was, that task is rendered impossible. A basic Google search for "news article sex trafficking," conducted purely for the purpose of responding to the instant motion, produces "39,200,000 results." Even if the government could glean which of the 39 million articles potential articles defense counsel sent to Lanier, any information contained in the news article itself cannot be claimed to be "confidential." A published news article simply is *not* equivalent to a letter written by defense counsel to Lanier detailing an anticipated defense trial strategy.

---

[4] Even the detention center had doubts that it was an attorney who sent the mail.

Because Lanier cannot meet his burden of proving that the government affirmatively acted to intrude into the attorney-client relationship and thereby obtain privileged information, he has not met his *prima facie* burden to show a Sixth Amendment violation. His motion must be denied.

> 2. *Even if Lanier could make a* prima facie *showing, his motion must still be denied because no prejudice resulted from the alleged violation.*

Assuming *arguendo*, that this Court finds (without any evidence to support the contention) that the government affirmatively intruded on Lanier's attorney-client privilege, Lanier was not prejudiced by the alleged intrusion. "Despite the high approbation our system has for the attorney-client privilege, the Supreme Court has twice held that government invasion of that privilege or the defense camp is not sufficient by itself to cause a Sixth Amendment violation. The defendant must have been prejudiced by such actions." *Hernandez*, 937 F.2d at 1493.

Here, the government is unaware of the contents of the article Lanier's attorneys sent him and thus, there is no likelihood it can use information it does not know to advance the government's case. The government was unaware, until the instant motion, that defense counsel and Lanier spoke about the article for two hours and deemed the article to provide a potential defense theory. To be sure, even now, the government cannot discern what the defense theory might be from the vague knowledge that the article talks about sex trafficking. The government has not spoken with the detention center regarding the conversation it had with defense counsel's secretary on April 22nd and is unaware of any further information disclosed (other than what is disclosed in Lanier's instant motion). It is axiomatic that the government's trial preparation, trial strategy, and evidence to be presented at trial cannot be based on information unknown to the government.

The Ninth Circuit and Supreme Court have reviewed cases in which defendants have made similar claims – that the government violated the attorney-client privilege and the defendant was prejudiced. Both the Ninth Circuit and Supreme Court found that the defendant's Sixth Amendment rights were not violated when privileged information was not relayed to the prosecution team.

In *Hernandez*, a co-defendant turned government cooperator attended joint defense meetings with the defendants and their counsel. 937 F.2d at 1493-94. The Ninth Circuit held that the defendants' Sixth Amendment rights were not violated because the co-defendant did not disclose to the government any statements or trial strategy he may have learned during the meetings. *Id.* at 1494.

In *Bursey*, an undercover law enforcement officer participated with the defendant in the commission of a crime. 429 U.S. at 547. The officer, while still posing as a co-conspirator, attended meetings between the defendant and his criminal defense counsel. *Id.* at 547-48. The officer did not discuss "'any details or information regarding the [defendant's] trial plans, strategy, or anything having to do with the criminal action pending against the [defendant],'" or pass on the information to the prosecuting attorneys. *Id.* at 548. In its ruling, the Supreme Court stated that "[t]here being no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by [the officer], there was no violation of the Sixth Amendment insofar as it is applicable to the States by virtue of the Fourteenth Amendment." *Id.* at 558.

Just like *Hernandez* and *Bursey*, where the government was unaware of the content of the privileged conversations, here, the government is also unaware of the details or information contained within the subject article or how it relates to his case. Just as the

Courts found no Sixth Amendment violation in *Hernandez* and *Bursey* because no information was communicated and no prejudice could be shown, no information was communicated and no Sixth Amendment violation has occurred. Without prejudice, no Sixth Amendment violation occurred, and the motion to dismiss should be denied.

### B. No Outrageous Conduct Occurred to Support Dismissal.

The "[defendant] must prove that the government's conduct was 'so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process'" to support the dismissal of an indictment. *Edmonds*, 103 F.3d at 825 (quoting *Garza–Juarez*, 922 F.2d at 904). If the Court determines that a Sixth Amendment violation occurred, Lanier cannot prove that the government's purported act was so "outrageous" or "flagrant" as to support dismissal of the indictment. Because the government did not affirmatively act at all, and Lanier has not, and cannot, prove that the government's acts were so flagrant, scandalous, or intolerable, Lanier's motion to dismiss should be denied.

To date, the government is still unaware of the content of the article, and thus, it is still unaware of how the article could relate to any potential defense trial theory. Because the government is unaware of any confidential information, the government can easily rebut any claim of prejudice and Lanier cannot demonstrate prejudice, let alone substantial prejudice rising to the level of outrageous government conduct. Because Lanier cannot demonstrate prejudice, his motion should be denied.[5]

///

---

[5] Even if this Court were inclined to find dismissal to be an appropriate remedy in this case, the news article apparently related to sex trafficking. Therefore, dismissal of charges related to coercion and enticement, travelling with intent to engage in illicit sexual conduct, transferring obscene material to a minor, and witness tampering, would be inappropriate. If this Court opts for the "most drastic" remedy of dismissal, despite no evidence to support it, dismissal should be restricted to only the sex trafficking charges.

### C. An Evidentiary Hearing is Not Required.

An evidentiary hearing is unnecessary. The government does not know the content of the article. It is impossible for the government's trial preparation, trial strategy, and evidence to be affected by information that is *unknown* to the government. An evidentiary hearing will not discern any further information from the government.

To the extent that the Court would like to inquire regarding the matter from the detention center or the United States Marshal's Service, the government has no objection and does not need to be privy to those conversations except as it relates to responding to this motion.

## IV.  Conclusion

Lanier has not, and cannot, establish a *prima facie* case that the government violated his Sixth Amendment right to counsel because the government did not act. Even if he could, the government has established that Lanier is not prejudiced by any purported act because the government is not privy to any privileged information. Even if this Court finds that Lanier's Sixth Amendment right to counsel was violated, Lanier has not, and cannot demonstrate the government's purported acts were so outrageous or flagrant causing substantial prejudice requiring dismissal of the indictment. Based on the foregoing, the government respectfully requests the Court deny Lanier's Motion Dismiss Indictment.

DATED: May 24, 2021.

CHRISTOPHER CHIOU
Acting United States Attorney

/s/ *Bianca R. Pucci*
BIANCA R. PUCCI
Assistant United States Attorney
District of Nevada