**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>vs.<br><br>JACQUES ANTON LANIER,<br><br>             Defendant. | 2:19-cr-00327-GMN-VCF-1<br><br>**REPORT AND RECOMMENDATION**<br><br>MOTION TO DISMISS INDICTMENT [ECF NO. 97] |

Defendant Jacques Anton Lanier filed a motion to dismiss the indictment. ECF Nos. 97. On November 19, 2021, I held an evidentiary hearing on the motion. ECF No.165. I recommend that the motion to dismiss be denied. ECF No. 97.

**I.     Overview**

On or around April 21, 2021, at 9:59 AM, Nancy Medina received a call from the mail room at the Southern Nevada Detention Center. Ms. Medina is attorney Christopher Oram's legal assistant. Christopher Oram represents defendant Jacques Lanier. The caller said she was checking to verify that Mr. Oram sent his client a piece of legal mail which had been identified as possible "contraband." The caller identified the item of concern as a news article. Believing that detention center personnel were

improperly reading his legal mail and reporting the contents to the prosecution, on April 27, 2021, Mr. Oram filed defendant's motion to dismiss indictment. ECF No. 97.

At the conclusion of briefing, I set an evidentiary hearing. ECF No. 117. The evidentiary hearing was held, after two stipulated continuances (ECF Nos. 121 & 138), on November 19, 2021. ECF No. 167. Documents and witnesses were subpoenaed. ECF Nos. 128, 140, 151, and 164. At the evidentiary hearing, defense counsel and the prosecutors affirmed that for precision, actions by (1) the United States Attorney's Office and assigned law enforcement agents (The Prosecution Team), (2) actions by The U.S. Marshals Service and (3) actions by Core Civic employees would be identified separately and not aggregated as actions by "The Government." At the evidentiary hearing I heard evidence related to the defense threshold burden. I took the matter under submission, with the intent of holding a second hearing, if needed, if the burden shifted to the prosecution regarding prejudice to the defendant.

In his opening statement, defense counsel Oram argued that four circumstances created statistical probabilities that AUSA Bianca Pucci gained an unfair advantage against the defendant by improperly learning the content of the legal mail at issue, as follows:

1. Ms. Pucci was the only AUSA that the two mail room workers ever spoke to;

2. Ms. Pucci learned that defense counsel had sent a Politico[1] article about sex trafficking;

3. The AUSA's response to defendant's motion to dismiss indictment [ECF No.97], ECF No 108, was filed on May 24, 2021. At page 9, footnote 3, as part of its explanation of detention center procedures for blocking receipt of contraband disguised as legal mail, the prosecution referred to recent attempts by detainees to obtain synthetic cannabinoids via mailings into the facility. Three days later, a piece of legal mail from Mr. Oram to Mr. Lanier was reported as contaminated by synthetic cannabinoids; and

---

[1] On the record, before his opening statement, Mr. Oram identified the article as a Politico article.

4. It has been alleged that Ms. Pucci recently improperly listened to a video of a defendant housed at the detention center, referred to only as Mr. Simms, speaking with his public defender Rebecca Levy.

Mr. Oram proffered that the phrase sex trafficking does not appear in the article until the fourteenth paragraph, so he argued someone in the mail room must have read the entire article. Defendant argues that the prosecution team's conduct violated his Sixth Amendment right to a privileged attorney-client relationship. Defendant argues that he is prejudiced because the prosecution now has knowledge of privileged information that could be used directly and indirectly, such as through trial preparation and case strategy.

AUSA attorneys Ms. Roohani and Mr. Burton appeared to argue the motion in place of Ms. Pucci. In Ms. Roohani's opening statement, she argued that Lanier has a pattern of receiving and sending mail to commit witness tampering. In March 2020, I held a hearing on Ms. Pucci's motion to restrict defendant's telephone privileges and mailings. See ECF Nos. 29 and 37. I granted the motion, and I entered a subsequent order that limited his contact to his attorneys and his children. ECF Nos. 29 and 32. Ms. Roohani argued that because of my order, Ms. Pucci worked with the Marshal Service and the detention center regarding the defendant's mail. In April 2021, I granted in part defense attorney Oram's motion to modify my order; I ordered Mr. Oram and Ms. Pucci to meet and confer regarding expanding Mr. Lanier's contact list. See ECF Nos. 92. Ms. Roohani represented that the parties could not agree on the expanded list, so Ms. Pucci filed a proposed order and Mr. Oram did not file a competing order. ECF No. 95. I granted Ms. Pucci's proposed order. ECF No. 103. Ms. Roohani represented that Ms. Pucci worked with the detention center regarding Mr. Lanier's mail until I granted the updated order that expanded his contacts.

The prosecution team argues that after I ordered the parties to meet and confer, but before I granted Ms. Pucci's proposed order, that the detention center reached out to Ms. Pucci regarding Mr.

3

1  Lanier's mail. Ms. Pucci represented as an officer of the court that someone at the detention center told
2  her that an envelope, that had a return address for Mr. Lanier's attorney, appeared to be contraband.
3  When Ms. Pucci asked about the contraband, the detention center employee told her that the envelope
4  contained a printed article about "sex trafficking." Ms. Pucci did not ask for any additional information,
5  told the employee she did not want to know about anything unless it relates to witness tampering, and
6  received no information regarding the substance of the article other than the general topic. Ms. Pucci
7  represented that the detention center employee stated that she reached out to Ms. Pucci because she had
8  contacted defense counsel's office to confirm whether the article was in fact sent from them and had not
9  yet received confirmation. The prosecution team argues that the NSDC is not an arm of the prosecution
10 team, and its acts cannot be imputed to them. The prosecution team also argues that it has never alleged
11 that the defense team has sent anything illegal, such as synthetic cannabinoids, to the facility. Ms.
12 Roohani proffered that she, and Mr. Burton, drafted the footnote about synthetic cannabinoids based on
13 their conversations with NSDC employees about their screening procedures in other cases. Ms. Roohani
14 argued that the information at issue incidentally came to the attention of the prosecution team, and that is
15 not a basis for a claim of prosecution misconduct.

16    At the evidentiary hearing, the defense called a number of witnesses. Officer Steven Bunton
17 testified that in April he opened the mail with Mr. Oram's return address on it in Mr. Lanier's presence.
18 In the sealed portion of the evidentiary hearing, Mr. Bunton testified regarding his security concerns
19 about the mail and why he returned it to the mail room. CoreCivic employees Lenaea Siniaho and Kevin
20 McCoy testified about the handling of Mr. Lanier's mail. Mr. McCoy testified that he determined, after
21 he tested the outside and inside of the envelope, that Mr. Lanier's mail tested positive for synthetic
22 cannabinoids due to cross contamination within the mail room. Assistant Warden Brandon Delaney and
23 U.S. Marshal Gary Jefferson both testified regarding the facilities' protocols for testing mail for
24 contraband, such as synthetic cannabinoids. Officer Bunton, Ms. Siniaho, Mr. McCoy, Warden Delaney,
25

and Marshal Jefferson all testified that they are not involved in the prosecution of Mr. Lanier and that they have not talked to Ms. Pucci, or anyone else from the prosecution team, about Mr. Lanier.

The two mail room clerks (Christy Stratton and Kellie Apolinar) testified that neither of them remembered specifically calling Ms. Pucci regarding the mail with the article. Ms. Apolinar testified that she had contact with Ms. Pucci because of Mr. Lanier's mail limitations. Ms. Stratton testified that she spoke to Ms. Pucci approximately three times about Lanier's mail because of Mr. Lanier's mail limitations. Ms. Stratton testified that Mr. Lanier was the only inmate at the facility that had an order restraining his mail privileges. Defense Counsel Oram also called his legal secretary Nancy Medina to testify. She testified about the phone call she received about the article from someone at the facility named Christy. Ms. Medina also testified that Christy said that based on her observation of it being a news article, she didn't know if that was legal mail are not. The prosecution team called FBI Agent James Mollica to testify regarding the different types of defenses to sexual exploitation charges he considers when investigating a case.

## II. Discussion

"The Sixth Amendment is meant to assure fairness in the adversary criminal process." *United States v. Danielson*, 325 F.3d 1054, 1059 (9th Cir. 2003). A district court may dismiss an indictment based on outrageous government conduct if the government's conduct amounts to a due process violation. *United States v. Ross*, 372 F.3d 1097, 1107 (9th Cir. 2004), on reh'g in part, 138 F. App'x. 902 (9th Cir. 2005) (citing *United States v. Simpson*, 813 F.2d 1462, 1464-65 (9th Cir. 1987)). Dismissal of an indictment for prosecutorial misconduct "is considered a 'drastic step' and is generally disfavored as a remedy." *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000) (quoting *Guam v. Muna*, 999 F.2d 397, 399 (9th Cir. 1993)). To warrant that remedy, the "[defendant] must prove that the government's conduct was 'so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process.'" *Unites States v. Edmonds,* 103 F.3d 822, 825 (9th Cir. 1996) (quoting *United States v.*

*Garza–Juarez*, 922 F.2d 896, 904 (9th Cir. 1993)).

Improper interference by the government with the confidential relationship between a criminal defendant and his counsel violates the Sixth Amendment only if such interference "substantially prejudices" the defendant. *Williams v. Woodford*, 306 F.3d 665, 683 (9th Cir. 2002). In deciding prejudice, the Ninth Circuit has adopted a two-step approach, and at each step the burden shifts. The defendant must first meet his burden to show that (1) a member of the prosecution team purposefully intruded on the attorney client relationship, (2) defense strategy was communicated to a member of the prosecution team, or (3) tainted evidence was admitted at trial.[2] *Danielson*, 325 F.3d at 1067. Then the burden shifts to the prosecutors to show that there has been no prejudice to the defendant because of the communications. *Id.*

Defendant has not met his burden to establish by a preponderance of the evidence that Ms. Pucci's actions on April 21, 2021, regarding defendant's legal mail containing a Politico article about sex trafficking, was improper. At the conclusion of the evidentiary hearing defendant's arguments in support of the motion were mostly based on speculation that lacked sufficient factual basis to sustain his burden of proof.

The defendant has not shown that anyone at the facility mail room communicated a privileged trial strategy to the prosecution team. There is no evidence that anyone at CoreCivic read Mr. Lanier's legal mail. The mail room clerks are not legally trained. One of the ways they check mail for contraband is by flipping through pages. I find that given this screening procedure, it is reasonable that a phrase within an article might have popped out to one of the mail room workers. Ms. Molina's testimony, that she spoke to Christy from the jail to confirm that the article came from Mr. Oram, is credible. Ms.

---

[2] Only the first two showings are relevant here, as trial has not occurred.

Medina also credibly testified that Christy told her that she looked at the article and didn't think that it was legal mail. Even though Ms. Stratton and Ms. Apolinar do not remember specifically talking to Ms. Pucci about the article earlier this year, they both admit that they talked to Ms. Pucci about Mr. Lanier's mail given my previous order. Considering the testimony of Ms. Molina, Ms. Apolinar, and Mr. Stratton together, I find that their testimony supports Ms. Pucci's proffer that someone in the mail room told her that Mr. Lanier received an article about sex trafficking in the mail. Defendant has not proved that Ms. Pucci learned of this by reading the article herself, or in any other manner.

General knowledge that Mr. Lanier received a publicly available article about sex trafficking, where the charge is related to sex trafficking, is not privileged information that can be used directly or indirectly at trial, such as through trial preparation and case strategy. Defense counsel, not the mail room staff, revealed that the article related to their defense strategy. See ECF No. 97 at 7. The prosecution team could not have independently surmised defense counsel's theory based on the phrase sex trafficking given that Mr. Lanier's charges are related to sex trafficking. Defense counsel also revealed that the article is a Politico article, something that the prosecution team also could not have independently surmised. I am convinced by Agent Mollica's testimony that as part of the prosecution team he considers potential defenses to sexual exploitation while investigating a case based on his experience. Mr. Oram himself revealed that his defense strategy relates to sex trafficking and that the article is a Politico article: this is of no fault to the prosecution team.

Mr. Oram also has not shown that information about the article was given to Ms. Pucci <u>at the direction of the prosecution team</u>. See *Danielson* 325 F.3d at 1071 ("It is not enough to establish a prima facie case to show that the government informant was involuntarily present at a meeting and passively received privileged information about trial strategy. Rather…the government informant must have acted affirmatively to intrude into the attorney-client relationship and thereby to obtain the privileged

information," at the direction of the prosecution team.). The only defense witnesses who talked with Ms. Pucci, or anyone else on the prosecution team, were Ms. Apolinar and Mr. Stratton. They talked to her pursuant to my order limiting his mail because of his attempted witness tampering, not because Ms. Pucci directed them to communicate with her. There is no evidence of an affirmative act by the prosecution team.

Even assuming arguendo that Ms. Pucci's inquiry about the contraband constituted an affirmative act, the defense has not made a showing that the prosecution team acted in an affirmative manner to intrude upon the attorney client relationship. The NSDC is not the government. Ms. Pucci asked a single question inquiring about the contraband. Ms. Pucci's actions in this matter did not rise to the level of, "excessive, flagrant, scandalous, intolerable and offensive as to violate due process" or "substantial prejudice" given the circumstances of this case (that Lanier has a history of witness tampering which led the court to restrict his communications). See *Edmonds* 103 F.3d at 825.

Mr. Oram also argued that the detention center must have worked with the prosecution team to retaliate against him when the center wrongfully accused his office of sending Mr. Lanier synthetic cannabinoids. I find that after hearing all the testimony Mr. Oram presented, that there is no evidence that NSDC staff conspired with the prosecution team to retaliate against Mr. Lanier or Mr. Oram's office regarding the mail that initially tested positive for synthetic cannabinoids. The footnote in the briefing stated only that contraband entering the facility though the mail (sometimes under the false guise of being legal mail) is a known problem. The NSDC staff credibly testified about their procedures and the actions they take as part of their job to keep contraband from entering the facility. None of the NSDC staff who testified, except the two mail room workers with knowledge of Mr. Lanier's mail restrictions, had contacts with Ms. Pucci or the prosecution team. None of the NSDC staff who testified exhibited any animus against Mr. Lanier. After hearing all the testimony from the defense witnesses, I did not

8

allow Ms. Levy to testify regarding Mr. Oram's allegations about Ms. Pucci in an unrelated case. Inquiry into these are collateral issues could not have had an effect on the outcome here. Since I find that the defendant has not met his initial burden, I need not set another hearing or consider the prosecution team's burden on second inquiry. I recommend that Mr. Lanier's motion to dismiss be denied.

ACCORDINGLY,

I RECOMMEND that defendant Jacques Anton Lanier's motion to dismiss the indictment (ECF No. 97) be DENIED.

DATED this 6th day of December 2021.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

9