**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:19-cr-00327-GMN-VCF-1 |
| vs. ) | |
| ) | **ORDER** |
| JACQUES ANTON LANIER, ) | |
| ) | |
| Defendant. ) | |

Pending before the Court is the Motion to Dismiss Indictment, (ECF No. 97), filed by Defendant Jacques Anton Lanier ("Defendant"). The Government filed a Response, (ECF No. 108), and Defendant filed a Reply, (ECF No. 111).

Also pending before the Court is Magistrate Judge Cam Ferenbach's Report and Recommendation with regards to Defendant's Motion to Dismiss Indictment, (ECF No. 171). Defendant timely filed an Objection, (ECF No. 185). The Government filed a Response to the Objection, (ECF No. 189).

Also pending before the Court is Defendant's Motion for Leave to File Excess Pages, (ECF No. 184). The Government did not file a Response.[1]

Also pending before the Court is Defendant's Motion to Seal the Objection to the Report and Recommendation, (ECF No. 186). The Government did not file a Response.[2]

Also pending before the Court is Defendant's Motion for Leave to File a Reply to the Government's Response to the Objection to the Report and Recommendation, (ECF No. 190).

---

[1] For good cause appearing, the Court grants Defendant's unopposed Motion for Leave to File Excess Pages, (ECF No. 184).

[2] For good cause appearing, the Court grants Defendant's unopposed Motion to Seal the Objection to the Report and Recommendation, (ECF No. 186).

The Government filed a Response, (ECF No. 191), to which Defendant filed a Reply, (ECF No. 192).

Also pending before the Court is Defendant's Motion Ordering an Investigation of the Nevada Southern Detention Center ("NSDC"), (ECF No. 193), and Motion for an Independent Investigation into the Safety/Security Concerns within NSDC, (ECF No. 198). The Government did not file Responses.

For the reasons discussed herein, Defendant's Motion to Dismiss is **DENIED** and the Report and Recommendation is **ADOPTED in full**. Furthermore, Defendant's Motion for Leave to File Excess Pages and Motion to Seal, are **GRANTED**. Defendant's Motion for Leave to File a Reply is **DENIED**. Defendant's Motion for Leave to File a Reply to the Report and Recommendation, Motion Ordering an Investigation, and Motion for an Independent Investigation, are **DENIED**.

I.  BACKGROUND

On December 31, 2019, a grand jury returned an Indictment for Jacques Anton Lanier ("Defendant"). (*See generally* Indictment, ECF No. 1). Defendant was indicted with fifteen counts, including Coercion and Enticement in violation of 18 U.S.C. § 1591(a); Sex Trafficking in violation of 18 U.S.C. § 1591(a) and (b)(2); Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b); and Transfer of Obscene Material to Minor, in violation of 18 U.S.C. § 1470. (*See id.*).

A.  PROTECTIVE ORDERS

At the initial arraignment, the Government notified the Court of its intent to file a proposed protective order. (Mins. Proceeding Initial Appearance, ECF No. 8). On January 9, 2020, Magistrate Judge Cam Ferenbach ("Magistrate Judge Ferenbach") issued the stipulated Protective Order, directing the parties to restrict access to any and all discovery in this case. (*See* Protective Order, ECF No. 18).

On January 27, 2020, a victim's mother discovered a three-page letter at her residence folded up and placed in her door. (Mot. Restrict Telephone Privileges 4:8–9, ECF No. 29). The mother of victim knew the letter was from Defendant based on his handwriting and the content of the letter. (*Id*. 4:9–11). Given Defendant's alleged contact with the victim, the Government filed a Motion to Restrict Defendant's Telephone Privileges and Mailings. This Court granted the Government's motion, limiting Defendant's phone and mail privileges to only his attorney and two children, J.L. and M.L. (*See id*. at 10–11); (*see also* Mins. Proceedings on Mot. Restrict Privileges, ECF No. 37). On January 11, 2021, the Court appointed Christopher Oram ("Mr. Oram" or "Defense Counsel") to represent Defendant. (Order Appointing Counsel, ECF No. 85).

Defendant, on April 12, 2021, filed a Motion to Modify the Protective Order, arguing that the existing Protective Order, (ECF No. 18), was overly restrictive. (*See* Mot. Modify Protective Order, ECF No. 93). The Court agreed to expand Defendant's contact list to include friends and family approved by prosecutors. (Mins. Proceeding Motion Hearing, ECF No. 105). The Court also ordered defense counsel to act as an intermediary for Defendant in communicating with individuals not included on his contact list. (*See id*.).

### B. GOVERNMENT'S ALLEGED MISCONDUCT

Defendant alleges that the Government and NSDC inappropriately learned defense strategy by reading two mailings that Defense Counsel sent to Defendant on April 20, 2021, and April 27, 2021.

#### 1. April 20, 2021 Mailing[3]

On April 20, 2021, Steve Bunton, a detention counselor at Nevada Southern Detention Center ("NSDC"), delivered legal mail to Defendant. (Transcript at 48–52, ECF No. 181). The legal mail had a cover letter with Defendant's name on it. (*Id*. at 51). Mr. Bunton further

---

[3] The Court refers to the first mailing based on its postmarked date. (Transcript at 48).

determined that there was a color print article contained within the legal mail that he examine for fifteen (15) to twenty (20) seconds for security purposes. (*Id*.).

Mr. Bunton opened the mail in front of Defendant, as per NSDC policy. (*Id*. at 49). According to Mr. Bunton, the mailing caused some concern due to the weight of the paper. (*Id*. at 50). Due to this concern, Mr. Bunton told Defendant that his legal mail was going to be put back in the envelope and turned into the mail room for further inspection. (*Id*. at 52). When Mr. Bunton returned to the mailroom, he gave the legal mail to Christy Stratton. (*Id*.).

On April 22, 2021,[4] Nancy Medina, Defense Counsel's legal assistant, received a call from someone at NSDC named Christy.[5] (*Id*. at 225). According to Ms. Medina, Christy Stratton asked if Defense Counsel sent the article, "because, from her review of it, it didn't seem like legal mail." (*Id*. at 225–26). According to Ms. Stratton, it is common procedure for her to "call attorneys [. . .] to confirm that they did send the piece of legal mail" but in no way did she ask about the contents of the mail. (*Id*. at 172–73).

On April 23, 2021, Defendant filed a grievance, complaining that Mr. Bunton and Mr. Moore violated his attorney-client privilege by "reading [his] legal mail and confiscating [his] legal mail from [his] attorney Christopher Oram even after it was scanned for contraband." (Obj. to R&R ("Obj.") 9:6–15, ECF No. 185). NSDC responded, stating that "this grievance was written to retaliate against DC Bunton after he found contraband in your legal work." (*Id*. 9:16–23).

//

//

---

[4] The R&R states that Ms. Medina received a call "on or around April 21, 2021." (R&R 1:20–21). Ms. Medina, however, clarified at the evidentiary hearing that she received the call on April 22, 2021. (Transcript at 225).

[5] Defendant spells her name as "Kristy," but the transcript from the evidentiary hearing clarifies that the correct spelling is "Christy." (Transcript at 157).

## 2. April 27, 2021 Mailing[6]

Based on the events surrounding the April 20, 2021 mailing, Defendant filed the instant Motion to Dismiss Indictment, (ECF No. 97). On April 27, 2021, Ms. Medina mailed another letter to Defendant. (Transcript at 65) (letter was postmarked April 27, 2021 but delivered on May 14, 2021). Linnea Siniaho, Case Manager at NSDC, delivered the mail to Defendant on May 17, 2021. (*Id*. at 59). At the time Ms. Siniaho delivered the mail, Defendant complained about the envelope because it was missing the silver clasp and seal upon delivery. (*Id*. at 61). On May 17, 2021, Defendant filed another grievance addressing the allegedly tampered envelope. (Obj. at 12).

On May 24, 2021, the Government filed a Response, and there, explained that NSDC indeed contacted the assigned prosecutor, Bianca Pucci, regarding Defendant's mail. (*See* Resp. to MTD, ECF No. 108). The Government noted that, on April 19, 2021, NSDC reached out to the Government concerning a letter Defendant addressed to Kenishua Smith, a contact not included in the March 2020 Order but included in the Government's proposed order. (*Id*. at 4). The Government additionally noted, in a footnote, that other inmates have attempted to smuggle contraband into the detention by pretending to send "legal mail." (Resp. to MTD at 9, fn.3). Inmates, the Government stated, have also attempted to obtain synthetic cannabinoids this way. (*Id*.).

Three days after the Government filed its Response, Kevin McCoy, a facility investigator at NSDC, responded to Defendant's inmate grievance concerning the missing clasp mailing postmarked April 27, 2021. (Transcript at 71). He handwrote the following in NSDC's Response to Defendant's Grievance:

> Your legal mail tested positive utilizing the Ion 600 scanner for synthetic cannabinoids & USMS Jefferson gave probable cause. Myself, Sgt. Peterson

---

[6] Even though the mailing was not delivered until May 17, 2021, the Court refers to this second mailing based on the postmarked date.

> mailroom tested numerous times. Thus USMS Jefferson gave notice to copy & send in.

(Obj. 13:8–15).

According to Defendant, Ms. Pucci extended a potential offer to Defendant on June 1, 2021. (*Id*. 14:14). On June 9, 2021, Defendant filed a Reply to Government's Response to the Motion to Dismiss, complaining the Defense Counsel was being accused of sending legal mail containing synthetic cannabinoids. (Reply to MTD, ECF No. 111). Defendant states that, the next day, Ms. Pucci formally withdrew the offer. (Obj. 14:16–18).

### C.  REPORT AND RECOMMENDATION, (ECF NO. 171)

On November 19, 2021, Magistrate Judge Ferenbach held a one-day evidentiary hearing on the Motion to Dismiss to determine whether Defendant met his threshold burden. (*See* Mins. Proceeding Evidentiary Hearing, ECF No. 167). Both parties gave opening statements and called respective witnesses. (*See id*.). At the conclusion of the hearing, Magistrate Judge Ferenbach took the matter under submission, with the intent of holding a second hearing if the burden shifted to the prosecution regarding prejudice. (R&R 2:9–11).

Magistrate Judge Ferenbach ultimately recommended denying Defendant's Motion to Dismiss because Defendant failed to meet his burden to establish, by a preponderance of evidence, that the Prosecution Team[7] improperly interfered with Defendant's confidential relationship with his attorney, Mr. Oram. (*See generally* R&R, ECF No. 171). Regarding the mailing on April 20, 2021, Magistrate Judge Ferenbach determined that: (1) Defendant did not show that anyone in the mail room communicated privileged trial strategy to the Prosecution Team; and (2) even if Ms. Pucci's inquiry about the contraband was an affirmative act, Defendant did not show that the Prosecution Team directed workers in the mail room to share

---

[7] The Prosecution Team refers to the United States Attorney's Office and assigned law enforcement agents. (R&R 2:5–7).

confidential trial information. (*Id*. 6:11–8:13). As to the synthetic cannabinoids, Magistrate Judge Ferenbach further found that "there is no evidence that NSDC staff conspired with the prosecution team to retaliate against Mr. Lanier or Mr. Oram's office regarding the mail that initially tested positive for synthetic cannabinoids." (*Id*. 8:16–18).

## II.  LEGAL STANDARD

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2.  Upon the filing of such objections, the Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections are made. *Id*.  The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. IB 3-2(b).

## III.  DISCUSSION

The Court first addresses Defendant's Motion for Leave to File a Reply, (ECF No. 190); Motion Ordering an Investigation of the Nevada Southern Detention Center, (ECF No. 193); and Motion for an Independent Investigation into the Safety/Security Concerns within NSDC, (ECF No. 198), before turning to Defendant's Motion to Dismiss, (ECF No. 97).

### A.  MOTION FOR LEAVE TO FILE A REPLY, (ECF NO. 190)

Defendant seeks leave to file a Reply to the Government's Response to Defendant's Objection to the R&R because "[t]he Government's Response is thirty-eight (38) pages long and contains several assertions in the Response that require correction and clarification for the record." (Mot. Leave File Reply 2:8–10).

"Any party wishing to object to a magistrate judge's findings and recommendations [. . .] must file and serve specific written objections with supporting points and authorities." D. Nev. Local R. IB 3-2(a).  "Replies will be allowed only with leave of court." *Id*.  The parties, in the instant case, engaged in extension litigation and presented witnesses during a full

evidentiary hearing. (*See* Mins. Proceeding Evidentiary Hearing, ECF No. 167).  The Court is aware of the factual discrepancies and objections in this case and finds that further briefing is not necessary.  Accordingly, Defendant's Motion for Leave to File a Reply, (ECF No. 190), is denied.

  **B. MOTION ORDERING AN INVESTIGATION OF THE NEVADA SOUTHERN DETENTION CENTER, (ECF NO. 193), AND MOTION FOR AN INDEPENDENT INVESTIGATION INTO THE SAFETY/SECURITY CONCERNS WITHIN NSDC, (ECF NO. 198).**

Defendant filed two motions, styled as letters, requesting the Court order an investigation into NSDC and subpoena USMS Jefferson. (*See* Mot. Ordering Investigation of NSDC, ECF No. 193); (*see also* Mot. Independent Investigation into the Safety Concerns within NSDC, ECF No. 198).  The District of Nevada's Local Rule IA 11-6 provides that, "once an attorney makes an appearance on behalf of a party, that party may not personally file a document with the court; all filings must thereafter be made by the attorney." *See* LR IA 11-6. Here, Defendant is represented by an attorney, Christopher Oram. (*See* Order Appointing Counsel, ECF No. 85).  Nevertheless, Defendant personally filed the motions ordering an investigation into the NSDC, (ECF Nos. 193, and 198), in violation of Local Rule IA 11-6. Accordingly, Defendant's Motion Ordering an Investigation of NSDC, (ECF No. 193), and Motion for an Independent Investigation into the Safety Concerns Within NSDC, (ECF No. 198), are denied.  Defendant is further warned to refrain from submitting motions without his counsel.

  **C. MOTION TO DISMISS, (ECF NO. 97) AND REPORT AND RECOMMENDATION, (ECF NO. 171)**

Defendant filed two broad objections to Judge Ferenbach's Report and Recommendation. (Obj. to R&R at 21–32).  First, Defendant objects to Magistrate Judge Ferenbach's finding that Ms. Pucci's assertions regarding the first mailing on April 20, 2021,

were credible. (*Id.* at 21–24).  Second, Defendant asserts that he can prove misconduct, as evidenced by: (1) NSDC's misclassification of Defendant's legal mail on April 20, 2021, as "contraband," (2) NSDC opening Defendant's mail on April 20, 2021 and April 27, 2021, without probable cause; (3) the Government's assertion that defense counsel committed serious misconduct by allegedly sending mail laced with synthetic cannabinoids; and (4) the USAO, USMS, and NSDC's actions in concert. (*Id.* at 24–32).

Dismissal for due process violation requires the government's conduct to "be so grossly shocking and outrageous as to violate the universal sense of justice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993).  There are two ways in which a district court can dismiss an indictment: (1) based on constitutional grounds; or (2) based on the court's inherent supervisory power.  *See United States v. Chanen*, 549 F.2d 1306, 1309 (9th Cir.), cert. denied, 434 U.S. 825, 54 L. Ed. 2d 83, 98 S. Ct. 72 (1977).  A district court may dismiss an indictment under its supervisory powers: (1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct. *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010) (quoting *United States v. Hasting*, 461 U.S. 499, 505, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983) (internal citations and quotation marks omitted)).  A district court can dismiss an indictment under its supervisory powers even if "the conduct does not rise to the level of a due process violation." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991).

The Sixth Amendment provides that "[i]n all prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., amend. VI.  Government intrusion on the attorney-client privilege "is not sufficient by itself to cause a Sixth Amendment violation.  The defendant must have been prejudiced by such actions." *United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir. 1991) (citing *United States v. Morrison*,

449 U.S. 361, 365, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981), and *Weatherford v. Bursey*, 429 U.S. 545, 558, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977)).

To demonstrate prejudice, the Ninth Circuit in *Danielson* adopted a two-step burden-shifting analysis. *United States v. Danielson*, 325 F.3d 1054, 1071 (9th Cir. 2003). First, "the defendant bears the initial burden of making a 'prima facie showing of prejudice.'" *Id*. at 1070 (citing *United States v. Mastroianni*, 749 F.2d 907–08 (1st Cir. 1984)). The government or government informant must have acted affirmatively to intrude into the attorney-client relationship and thereby to obtain the privileged information. *Id*. at 1071. Once the *prima facie* case has been established, "the burden shifts to the government to show that there has been . . . no prejudice to the defendant[] as a result of these communications." *Id*. (citing *Mastroianni*, 749 F.2d at 908).

The Court analyzes below whether the Government affirmatively acted to intrude on the attorney-client privilege by reading the April 20, 2021 and April 27, 2021 mailing.

### 1.   April 20, 2021 Mailing

Defendant argues that the Prosecution Team learned of confidential trial strategy when NSDC read his April 20, 2021 mailing. (Obj. 7:3–10). In his Objection, Defendant points out four key factual discrepancies between Ms. Pucci's initial assertions in the Response to the MTD and witness testimony at the evidentiary hearing. (*Id*. at 21–24).

Though Defendant points out some meritorious factual differences,[8] none of his objections otherwise link NSDC's actions with the Prosecution Team. In *Weatherford v. Bursey*, the Supreme Court held that there was no violation of the Sixth Amendment because there was "no tainted evidence [. . .], no communication of defense strategy to the prosecution,

---

[8] For example, Mr. Bunton testified that there was a cover sheet in the legal mail. (ECF No. 181 at 50–51). His testimony directly contradicts the Government's representation in its Response and suggests that the legal mailing on April 20, 2021, may have included a cover sheet that alerted Mr. Bunton that the mailing he handled was legal mail.

and no purposeful intrusion by [the government agent]." *Weatherford*, 429 U.S. at 558. The Court reasoned, "this is not a situation where the State's purpose was to learn what it could about the defendant's defense plans and the informant was instructed to intrude on the lawyer-client relationship or where the informant has assumed for himself that task and acted accordingly." *Id*. at 557. Rather, the defendant and his attorney invited the government informant to the meetings. *Id*. The privileged information, furthermore, "remained uncommunicated" to the government. *Id*. Considering these factors, the Supreme Court determined that the government agent thus did not violate the Sixth Amendment because the government did not direct the agent to collect confidential information and the agent did not otherwise communicate privileged defense strategy to the prosecution. *Id*.

Similarly, the Prosecution Team in the instant case neither instructed nor directed NSDC to gather defense strategy by reading Defendant's legal mail. The parties agreed, at the evidentiary hearing, that actions by the Prosecution Team, U.S. Marshals, and CoreCivic employees would be considered separately and not aggregated. (R&R 2:5–9). In his Objection to the R&R, Defendant does not rebut this fact, but argues that the Prosecution Team worked in concert with NSDC. (Obj. 31:16–32:2). Defendant broadly asserts that NSDC and USAO, together, infringed upon the attorney-client privilege as evidenced by Ms. Pucci sending an email withdrawing an offer that was due to expire more than a month later. (*Id*. 31:23–25). Such assertion, however, is no more than conjecture. The fact that NSDC's lawyer sat at the United States Attorney's counsel does not demonstrate that USAO affirmatively acted and directed NSDC to inappropriately read Defendant's legal mail. (*See* Obj. 31:16–22).

Testimony at the evidentiary hearing does not otherwise support a finding that NSDC revealed key defense strategy from the April 20, 2021 mailing to the USAO. Like in *Weatherford*, multiple witnesses testified that NSDC—the alleged government agent in this case—did not communicate confidential information to the Prosecution Team. *Weatherford*,

429 U.S. at 557.  Christy Stratton, who works in the mailroom at NSDC and called Mr. Oram's office concerning Defendant's mail, testified that she did not have any conversations with the Prosecution Team about the content of Defendant's legal mail. (Transcript at 182).  Kellie Apolinar, another mail room clerk at NSDC, affirmed that she had not spoken with Ms. Pucci about the evidence in the case and only about her efforts to comply with the court order restricting Defendant's mailing privileges. (*Id*. at 202–03).  Further, multiple witnesses testified that the Prosecution Team neither directed nor instructed them to hand over legal mail. (*Id.* at 171) (Christy Stratton testifying that she was not instructed by anyone to specifically talk to Ms. Pucci about Defendant's email; (*see also id*. at 202) (Kellie Apolinar denying that she ever received direction from Ms. Pucci to read, provide, or inform the Government of the contents of Defendant's legal mail); (*see also id*. at 119) (Kevin McCoy testifying that he recognized the names of the Prosecution Team but did not speak to them about the mailing he tested).

Though such connection could establish a violation of the attorney-client relationship, Defendant carries the burden, and fails, to show that the government "acted affirmatively" to obtain privileged information. *Danielson*, 325 F.3d at 1071.  The factual discrepancies do not warrant the extreme measure of dismissing the indictment, especially since Defendant fails to meet his burden in demonstrating that the Prosecution Team, for example, directed or instructed NSDC to hand over privileged information. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1093 (9th Cir. 1991) (finding that "[n]one of these facts, however, either in isolation or in concert warrants the extreme measure of dismissing the indictments").  Defendant's critical failure to elaborate on the USAO's affirmative acts significantly undermines his case.[9]

---

[9] Defendant additionally argues that the R&R fails to address Defendant's concern that the first article mailed on April 20, 2021, was incorrectly deemed contraband. (Obj. 26:3–9).  Though the R&R did not address this exact point, the Court agrees with Judge Ferenbach's recommendation denying the Motion to Dismiss.  The same issue remains: Defendant is unable to show that NSDC's misconduct—allegedly reading Defendant's mail and deeming it contraband—is attributable to the Prosecution Team.

### 2. April 27, 2021 Mailing

Defendant additionally theorizes that the Prosecution Team and NSDC acted in concert as evidenced by the USAO and NSDC's actions in relation to Defendant's April 27, 2021 mailing. (Obj. 26:22– 31:5).  In the Government's Response to the Motion to Dismiss, the Government noted that inmates have attempted to smuggle "contraband," such as synthetic cannabinoids, into the detention under the guise of legal mail. (Resp. to MTD 9:20, fn. 3). Then, three days after the Government filed its Response, NSDC responded to Defendant's grievance complaining about irregularity in the mail. (Obj. 26:28–27:1).  The Response noted that the April 27, 2021 mailing tested positive for synthetic cannabinoids and the USMS gave permission to scan and send in copies. (*Id*. at 13).  Defendant, in his Reply to the MTD, complained that NSDC falsely accused his office of sending legal mail containing synthetic cannabinoids. (*Id*. 14:5–13).  The next day, Ms. Pucci withdrew the potential offer in the case. (*Id*. 14:13–18).  Based on these facts, Defendant argues that: (1) NSDC improperly opened his mail without probable cause; (2) NSDC falsely accused Defense Counsel of sending synthetic cannabinoids in the legal mail; and (3) the USAO vindictively retaliated against him by withdrawing the offer after it's false accusations. (*Id*. at 26–31).

These factors, which imply that NSDC revealed privileged information to the Prosecution Team, do not demonstrate that the Prosecution Team affirmatively acted and purposefully intruded on the attorney client relationship.  Defendant bears the burden to establish that the Prosecution Team affirmatively acted to seek the privileged strategy. *See United States v. Hernandez*, 937 F.2d 1490, 1494 (9th Cir. 1991) (affirming the district court's refusal to dismiss the indictment because the witness did not reveal anything to the government other than a statement and any statement was otherwise non-prejudicial); *Weatherford v. Bursey*, 429 U.S. 545, 558, 97 S. Ct. 837, 845 (1977) (finding that the agent did not communicate defense strategy to the prosecution and thus, did not violate Defendant's Sixth

Amendment right); *United States v. Kincade*, No. 2:15-cr-00071-JAD-GWF, 2016 U.S. Dist. LEXIS 180906, at *48 (D. Nev. Dec. 28, 2016) (refusing to dismiss the indictment because neither the government nor their agent listened to any of the attorney-client conversation and thus, did not unfairly acquire prejudicial information). Defendant does not raise any testimony from the trial suggesting that the Prosecution Team directed NSDC to reveal privilege information. Rather, Defendant theorizes based on a series of facts that could imply misconduct. But, similar to the April 20, 2021 mailing, Defendant's implications of "improper misconduct" concerning the April 27, 2021 mailing do not demonstrate that the Prosecution Team affirmatively acted to intrude on the attorney-client relationship such that dismissal is warranted.

Even assuming that NSDC told the Prosecution Team confidential information, "[m]ere possession by the prosecution of otherwise confidential trial strategy information does not establish prejudice" *Danielson*, 325 F.3d at 1071. As Magistrate Judge Ferenbach found, even assuming that Ms. Pucci's question of "what is it" constituted an affirmative act, Defendant further fails to show that the Prosecution Team acted in an affirmative manner that was so flagrant, dismissal is warranted. (*See* R&R 8:6–13). Because NSDC is not a part of the Prosecution Team and Defendant does not assert NSDC's actions are otherwise imputed to the Prosecution Team, Defendant's assertions of NSDC misconduct do not arise to a Sixth Amendment violation.[10] The Court thus denies Defendant's Motion to Dismiss the Indictment.

//

//

---

[10] Defendant additionally argues that NSDC worked with the Prosecution Team to vindictively retaliate against him when NSDC wrongfully accused his office of sending Defendant synthetic cannabinoids. As Magistrate Judge Ferenbach determined, "there is no evidence that NSDC staff conspired with the prosecution team to retaliate against Mr. Lanier or Mr. Oram's office regarding the mail that initially tested positive for synthetic cannabinoids." (R&R 8:16–18). Sneaking in synthetic cannabinoids via legal mail is seemingly a known and widespread issue at NSDC such that the Government's mention of the issue and NSDC's testing for synthetic cannabinoids is not unusual.

### 2. Additional Evidentiary Hearing

Defendant, in his Objection, requests the Court grant an additional evidentiary hearing in this case. (Obj. 35:19–37:19). Defendant cites to *Danielson*, which he asserts, remanded for an evidentiary hearing for the Government to demonstrate it did not use privileged information in its trial strategy. (*Id*. 35:20–25). The Ninth Circuit in *Danielson*, however, granted additional hearing at the trial level because it found that Defendant had met its *prima facie* burden. *Danielson*, 325 F.3d at 1074 (finding that the government deliberately sent its agent to obtain information and that the government agent affirmatively acted to elicit privileged trial strategy). Because the Court finds that Defendant has not met his *prima facie* burden, the Court denies Defendant's request for additional evidentiary hearing.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Indictment, (ECF No. 97), is **DENIED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Cam Ferenbach's Report and Recommendation, (ECF No. 171), is **ADOPTED in full**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Excess Pages, (ECF No. 184), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Seal the Objection to the Report and Recommendation, (ECF No. 186), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File a Reply to the Government's Response to the Objection to the Report and Recommendation, (ECF No. 190), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion Ordering an Investigation of the NSDC, (ECF No. 193), and Motion for an Independent Investigation into the

Safety/Security Concerns within NSDC, (ECF No. 198), are **DENIED**. The Clerk of Court shall strike these motions, (ECF Nos. 193 and 198), from the docket.

     **DATED** this  25  day of July, 2022.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT